Case 3:03-cv-04579-MJJ  Document 32  Filed 12/20/05  Page 1 of 5

FILED
DEC 20 2005
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD BOSACK et al., | No. C03-04579 MJJ |
| Plaintiff, | **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| USA, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Leonard Bosack and Sandy Lerner's ("Plaintiffs") Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] The motion is opposed by the United States ("Defendant"). For the following reasons, the Court **DENIES** Plaintiffs' Motion for Summary Judgment.

## FACTUAL BACKGROUND

This action concerns Plaintiffs' tax liability for the tax year ended December 31, 1997. Plaintiffs are partners in & Capital Partners, L.P. ("Capital", the "Partnership"). Capital has three partners, David Soward ("Soward"), who is a 10% general partner, Leonard Bosack ("Bosack"), a 45% limited partner, and Sandra Lerner ("Lerner"), who is a 45% limited partner.

In 2001, the Internal Revenue Service ("IRS") began examining Capital's tax records in the

---

[1](03-4579, Docket No. 20, November 08, 2005).

course of a larger examination of a particular basis shifting tax shelter (the "Shelter"). The IRS received information in July 2001 of Plaintiffs' partnership roles in Capital, and sought access to their tax records as well. In examining Plaintiffs 1996 and 1997 tax returns, the IRS determined that Plaintiffs were potentially involved in the Shelter under investigation.

Based upon the statute of limitations, the IRS had until October 15, 2001 to make their assessment for the 1997 tax year. Due to conflicting information, IRS agents could not determine whether Capital was a partnership governed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. 97-248, § 401(a), 96 Stat. 648.[2] The tax code provides for different procedures, depending upon whether a partnership is or is not covered by TEFRA. Concerned that the statute of limitations was set to expire, the IRS sent Plaintiffs a Form 872 requesting an extension of the statute of limitations (the "First Extension Request", the "First Request"). Plaintiffs signed and returned the First Request on October 2, 2001, extending the IRS's assessment period until December 1, 2001.

The IRS also sought, and obtained on October 10, 2001, an extension of time to evaluate Capital's 1997 tax return (the "Partnership Extension") pursuant to TEFRA requirements. However, the Partnership Extension contained an typographical error, mistakenly indicating the deadline extension as October 15, *2001*, instead of October 15, *2002*.

On October 15, 2001, facing the Partnership's statute of limitations deadline, the Internal Revenue Service issued Capital a Final Partnership Administrative Adjustment ("FPAA") for the 1997 taxable year pursuant to 26 U.S.C. §§ 6221-6233. The FPAA disallowed a $7,021,129 short-term capital loss that the Partnership had claimed for that year. On November 30, 2001, pursuant to 26 U.S.C. § 6212, the IRS issued a Statutory Notice of Deficiency ("SNOD") to Bosack and Lerner with respect to their 1997 personal federal income tax return. In the SNOD, the IRS proposed a disallowance of Bosack's and Lerner's individual respective portions of the purported short-term capital loss flowing from the partnership in the amount of $1,925,191. The IRS issued both a SNOD and a FPAA in order to protect its interests in the event that Capital turned out not to be a TEFRA partnership.

---

[2]TEFRA provides a method for adjusting "partnership items" in a single, unified partnership proceeding, rather than in separate proceedings with each partner.

2

On February 13, 2003, Plaintiffs' representatives paid the IRS funds totaling $1,248,405.19 pursuant to the November 30, 2001 SNOD. After filing a timely refund claim with the IRS alleging overpayment, on October 9, 2003, Plaintiffs filed the current district court action, pursuant to 26 U.S.C. §§ 7402, 7422 and 28 U.S.C. 1346, seeking reimbursement. Plaintiffs allege seven causes of action challenging the validity of the SNOD and its provisions.

Plaintiffs filed the instant motion for summary judgment, arguing that the SNOD was untimely.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## ANALYSIS

Plaintiffs base their request for summary judgment on the alleged untimeliness of the November 30, 2001 SNOD. Plaintiffs assert that the SNOD was barred by the statute of limitations. Generally, the limitations period for assessing any income tax attributable to a partnership expires three years after the partnership files its return for the tax year in question. 26 U.S.C. § 6229(a). Section 6229(b) governs agreements extending the statute of limitations in TEFRA assessment actions, and provides that, "[a]ny agreement under section 6501(c)(4) shall apply with respect to the period described in subsection (a) only if the agreement *expressly provides* that such agreement applies to tax attributable to partnership items." (emphasis added). Plaintiffs argue that because the First Extension Request did not contain such express language, it was invalid under 6229(b), and did not serve to extend the statute of limitations beyond the October 15, 2001 limitations deadline. Therefore, Plaintiffs contend, the November 30, 2001 SNOD was untimely and barred by the statute of limitations.

Defendants vigorously contest this logic, asserting that there remains a material issue of fact as to whether Capital is a even TEFRA partnership. If Capital is not governed by TEFRA, then § 6629(b)'s provisions would not apply to the First Extension Request. Defendants have submitted considerable evidence that the IRS agents had difficulty in classifying Capital's TEFRA status during the 2001 investigation. The agents initially suspected that Capital was a TEFRA partnership because Capital's 1995-1997 tax returns contained check-boxes indicating as such. (Barrett Decl. ¶ 18). Additionally, the 1996 return specifically designated Soward as a Tax Matters Partner ("TMP"), something required of TEFRA partnerships under 26 U.S.C. § 6231(a)(7). (Barret Decl. ¶ 18). However, Soward, when asked about Capital's TEFRA status, stated that he did not know whether Capital was a TEFRA partnership, and had merely signed tax returns prepared by accounting firm KPMG. (Landeck Decl., ¶ 5; Hahn Decl., ¶ 4). Based upon this contradictory information, the IRS agents were unsure as to whether Capital was a TEFRA partnership. (Barret Dec. ¶ 33). Therefore, the IRS decided to proceed with both TEFRA and non-TEFRA assessment procedures in order to protect the IRS's position in the event that it was determined that Capital was not a TEFRA partnership. (Barret Decl. ¶ 33).

4

The Court agrees with Defendants that there exists a material issue of fact as to whether Capital is governed by TEFRA. The Court is aware of no authority, and Plaintiffs have cited none, for the proposition that § 6629(b)'s provisions should apply to non-TEFRA partnerships. If Capital is not a TEFRA partnership then the absence of express language pursuant to § 6629(b) cannot serve to invalidate the First Extension Agreement.[3] Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: 12/20/2005

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiffs argue that because Defendants initially suspected that Capital was a TEFRA partnership, then TEFRA procedures must thereafter apply. The Court disagrees. Defendants' initial belief about Capital's status does not govern its TEFRA status. Rather, Capital's characterization as a TEFRA or non-TEFRA partnership is governed by the provisions of 26 U.S.C. §§ 6221-6233. Moreover, Defendants have submitted strong evidence that the IRS agents were uncertain about Capital's TEFRA status during the 2001 investigation.